IN THE UNITED STATES BANKRUPTCY COURT FOR THE
WESTERN DISTRICT OF MISSOURI

| | |
|---|---|
| IN RE: | ) |
| | ) |
| TOWN CENTER PLAZA, L.L.C, | ) Case No. 09-61290 |
| | ) |
| Debtor. | ) |
| | ) |
| JOHN M. GILL MASONARY d/b/a | ) |
| JOHN M. GILL MASONARY, INC., | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Adversary No. 09-6052 |
| | ) |
| TOWN CENTER PLAZA, L.L.C., et al., | ) |
| | ) |
| Defendant. | ) |

ORDER  DENYING ALLIED ROOFING SYSTEMS, INC'S MOTION TO AMEND CROSSCLAIM AND COUNTERCLAIM (Doc. #153);
DENYING ARVEST BANK AND SURE PROPERTY MANAGEMENT, L.L.C'S MOTION TO STRIKE DOCUMENTS (Doc. #155);
AND
DIRECTING JUDGMENT:
 (i) IN FAVOR OF ALLIED ROOFING SYSTEMS, INC. AND AGAINST DEBTOR TOWN CENTER PLAZA, L.L.C.;
(ii) IN FAVOR OF ALLIED ROOFING SYSTEM, INC. AND AGAINST DEFENDANT GREAT WALL CONSTRUCTION, INC.;
(iii) IN FAVOR OF CHRISTOPHER HALL AND AGAINST ALLIED ROOFING SYSTEMS, INC.;
(iv) IN FAVOR OF ARVEST BANK AS SUCCESSOR TO SOLUTIONS BANK AND AGAINST ALLIED ROOFING SYSTEMS, INC.; and
(v) IN FAVOR OF ARVEST BANK AS SUCCESSOR TO SOLUTIONS BANK AND AGAINST GT CASEY, INC.

Debtor Town Center Plaza, L.L.C. removed this action from the Circuit Court of Greene County, Missouri. While most of the claims involved mechanics lien claims of subcontractors on the Debtor's real estate, the remaining issues relate to one subcontractor, Allied Roofing Systems, Inc., which did not file a mechanics lien. Instead, I am called upon to decide the amount of Allied's claim against the Debtor and the general contractor on the job, and whether Allied has a claim for unjust enrichment against the construction lender.[1] The following, along with those announced at the conclusion of the trial in this matter, constitutes my Findings of Fact and Conclusions of Law in accordance with Rule 52 of the Federal Rules of Civil Procedure as made applicable to this proceeding by Rule 7052 of the Federal Rules of Bankruptcy Procedure.

The Debtor, Town Center Plaza, L.L.C., owns property commonly known as the Town Center Plaza located in Republic, Missouri. On December 28, 2007, SolutionsBank[2] made a loan to the Debtor, secured by a Deed of Trust, for the

---

[1] I note that one month prior to trial, Allied filed a motion to abstain pursuant to 28 U.S.C. § 1334, which I denied as untimely. *See Personette v. Midgard Corp. (In re Midgard Corp.)*, 204 B.R. 764, 777 (B.A.P. 10th Cir. 1997) (holding that a request for abstention filed eight days after removal was timely); *Novak v. Lorenz (In re Novak)*, 116 B.R. 626, 628 (N.D. Ill. 1990) (holding that motion for abstention filed one year after the movant filed an answer was not timely); *In re Applegate*, 414 B.R. 209, 215 (Bankr. N.D. Ohio 2008) (holding that motion to abstain filed ten months after adversary filed was not timely).

[2] SolutionsBank was closed by the Office of the State Bank Commissioner for the State of Kansas on December 11, 2009, and its assets were placed into a receivership controlled by the Federal Deposit Insurance Corporation. Arvest Bank purchased certain assets of SolutionsBank

refinancing of the land which had already contained two separate commercial structures, as well as part of the construction cost of building a 20,000 square foot retail building on the land. The amount of the loan was $4,650,000, of which $689,198.31 was advanced for the construction of the new structure. No subcontractor had any contact with, or even knew about, the existence of any such lender before it began its work or even after it had commenced work.

Despite the fact that the construction loan was fully disbursed by the Bank, several of the subcontractors who performed work upon the new structure were not paid. Five of those subcontractors filed mechanic's liens, and one, Allied Roofing Systems, Inc., asserted a claim for quantum meruit. The Bank has settled with all of the mechanic's lien claimants except for GT Casey, Inc. GT Casey never filed any pleading regarding its claim and, therefore, any lien it may have is extinguished under § 429.170 of the Missouri Statutes, which requires filing a lawsuit within six months of the filing of the lien. Therefore, judgment will be entered in favor of the Bank, and against GT Casey.

Pursuant to a contract with the general contractor on the job, Great Wall Construction, during the spring and summer of 2008, Allied installed a roofing system

---

from the FDIC and is now the successor to SolutionsBank in this matter. Hereafter, I refer to SolutionsBank and Arvest, collectively, as "the Bank."

on the new structure. The contracted price for the work and materials was $111,367.00. Hogan Land Title, as the Bank's disbursing agent, paid Allied $64,737.25 of the contract price, leaving $46,629.75 unpaid. There is no dispute that the roof adds value to the building, or that the amount Allied charged was fair and reasonable. Allied is, therefore, entitled to judgment against the Debtor and Great Wall Construction, Inc. for the work it performed and for which it was not paid.[3]

Allied also seeks a judgment against Christopher Hall, the Vice President of Great Wall Construction, Inc., individually. Technically, the Standard Form of Agreement Between Contractor and Subcontractor between Allied and Great Wall Construction identified the contractor as "Great Wall Construction" as opposed to "Great Wall Construction, Inc." However, Christopher Hall signed the contract in his capacity as vice president of the company, and not in his individual capacity. As a result, I find that the contract was with Great Wall Construction, Inc., and not with Christopher Hall d/b/a Great Wall Construction. Consequently, Allied has asserted no basis for liability against Christopher Hall individually, and, therefore, is not entitled to judgment against him.

Next, Allied asserts that it is entitled to a judgment against the Bank. The Bank

---

[3] Indeed, at the trial, counsel for the Debtor and Great Wall Construction stated that neither of those entities contested Allied's claims against them, in the amount of $46,629.75. They do, however, contest Allied's claims for interest and attorneys' fees, discussed below.

does not contest that the work was performed as promised, but does challenge its liability for such work. Allied did not file a mechanic's lien upon the property. Rather, it seeks relief from the Bank directly through a theory of quantum meruit, or unjust enrichment.

A claim for quantum meruit or unjust enrichment is a claim based on quasi or implied contract.[4] The elements of unjust enrichment are: "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; [and] (3) that it would be unjust to allow the defendant to retain the benefit."[5] The last element, that retention of the benefit is unjust, is the most significant and most difficult to prove.[6]

> In determining whether it would be unjust for the defendant to retain the benefit, courts consider whether any wrongful conduct by the defendant contributed to the plaintiff's disadvantage. Mere receipt of benefits is not enough when there is no showing that it would be unjust for defendant to retain the benefit received. There must be something more than passive acquiescence, such as fault or undue advantage on the part of the defendant, for defendant's retention of the benefit to be unjust.[7]

To determine if retention of the benefit was unjust, the Court may look at the

---

[4] *Green Quarries v. Raasch*, 676 S.W.2d 261, 264 (Mo. Ct. App. W.D. 1984).

[5] *S & J, Inc. v. McLoud & Co. L.L.C.,* 108 S.W.3d 765, 768 (Mo. Ct. App. S.D. 2003).

[6] *Graves v. Berkowitz*, 15 S.W.3d 59, 61 (Mo. Ct. App. S.D. 2000).

[7] *S & J, Inc. v. McLoud & Co.*, 108 S.W.3d at 768 (citations and internal quotation marks omitted).

relationship between the parties. The relationship is relevant because in Missouri, the "well-known rule [is] that benefits must either be *requested or knowingly accepted* by the defendant before the law will imply a promise to pay."[8]

Allied admits that the Bank never requested or knowingly accepted the benefits of its work. In a February 12, 2010 deposition of Brian Cogdill, general manager and representative of Allied, Mr. Cogdill testified that:

> ...[Allied Roofing] did not have any relationship with SolutionsBank before it began its work …; [had no] … contact with SolutionsBank after the work began …, [and that] Solutions did not authorize the work or was even aware that Allied Roofing was doing work [on the project].[9]

As the Bank points out, this admission is dispositive of the claim for unjust enrichment because Allied admits that no one at the Bank authorized or was even aware of the work being done and, therefore, Allied cannot prove one of the elements necessary to legally imply a promise to pay.

As one court has said, implying such a promise to pay would, in effect, make the owner of property the insurer of a contract entered into by other parties.[10] The lender, like an owner, is not an insurer of payment by an owner for a subcontractor's

---

[8] *Dalton v. Bundy*, 666 S.W.2d 443, 445 (Mo. Ct. App. W.D. 1984) (emphasis in original).

[9] Deposition Testimony of Brian Cogdill at 12-13.

[10] *Associate Engineering Co. v. Webbe,* 795 S.W.2d 606, 609 (Mo. Ct. App. E.D. 1990) (refusing to allow a claim of unjust enrichment against defendant where the plaintiff negotiated with a third party and expected payment from a third party).

work on the owner's property. Equity simply does not require that the Bank insure a contract that was negotiated and entered into entirely by other parties. Therefore, because the Bank did not knowingly accept or request the benefit, it should not be forced to insure the contact entered into between Allied and Great Wall Construction.

Even if the Court had determined that the Bank did request or knowingly accept the benefits, the Bank is correct that Allied still cannot prevail because the loan was fully disbursed.[11] According to the Court in *Green Quarries*, "[i]n resolving the issue [of] whether a landowner has been unjustly enriched by a subcontractors' improvements on the owner's real estate, courts have repeatedly looked to whether the landowner has already paid the general contractor the amount due the general contractor under their express contract."[12]

In equity, the question of whether payment was made is important because "[a]lthough the subcontractor may remain unpaid and thus suffer detriment, equity will not require the owner to pay twice."[13] Similarly, the Bank already provided

---

[11] *Moellering Concrete, Inc. v. Doerr*, 784 S.W.2d 864 (Mo. Ct. App. E.D. 1990) (holding that payment to the contractor precluded a claim of unjust enrichment against the owner of the property); *see also County Asphalt Paving, Co. v. Mosley Constr., Inc.*, 239 S.W.3d 704, 711 (Mo. Ct. App. E.D. 2007) ("The question of unjust enrichment focuses not upon what the contractor has received, but rather what the owner has paid.") (*quoting International Paper v. Futhey*, 788 S.W.2d 303, 306 (Mo. Ct. App. E.D. 1990)).

[12] *Green Quarries v. Raasch*, 676 S.W.2d at 264 (citations omitted).

[13] *Id.*

funding according to the terms of the loan for the construction and, while Allied roofing may have suffered a detriment, equity simply does not require the Bank to pay twice.

Finally, Allied seeks interest and attorneys' fees, as part of its claim against the Debtor, as well as against Great Wall Construction and the Bank, pursuant to § 431.180 of the Missouri Statutes. That statute, referred to as the "Missouri Private Prompt Payment Act,"[14] provides:

> 1. All persons who enter into a contract for private design or construction work after August 28, 1995, shall make all scheduled payments pursuant to the terms of the contract.
>
> 2. Any person who has not been paid in accordance with subsection 1 of this section may bring an action in a court of competent jurisdiction against a person who has failed to pay. The court may in addition to any other award for damages, award interest at the rate of up to one and one-half percent per month from the date payment was due pursuant to the terms of the contract, and reasonable attorney fees, to the prevailing party. If the parties elect to resolve the dispute by arbitration pursuant to section 435.350, RSMo, the arbitrator may award any remedy that a court is authorized to award hereunder.
>
> 3. The provisions of this section shall not apply to contracts for private construction work for the building, improvement, repair or remodeling of owner-occupied residential property of four units or less.
>
> 4. For purposes of this section, design or construction work shall include design, construction, alteration, repair or maintenance of any building,

---

[14] *See Fru-Con/Fluor Daniel Joint Venture v. Corrigan Bros., Inc.*, 154 S.W.3d 330, 337 (Mo. Ct. App. E.D. Mo. 2004).

8

roadway or other structure or improvement to real property, or demolition or excavation connected therewith, and shall include the furnishing of surveying, architectural, engineering or landscape design, planning or management services, labor or materials, in connection with such work.[15]

At the outset, Allied did not have a contract with anyone other than Great Wall Construction, Inc. and, as a result, the statute simply does not apply to any party other than Great Wall Construction, Inc.

Great Wall Construction does not dispute that its relationship with Allied meets the threshold requirements in the statute – namely, that Great Wall entered into a private construction contract with Allied, that the contract provided for scheduled payments, and that Allied did not receive all of its payments as scheduled. Rather, Great Wall Construction essentially asserts that an award of interest and attorneys' fees under the statute is punitive in nature, and that such an award is not warranted under the circumstances.

An award of interest or attorneys' fees under § 431.180 is based entirely on the court's discretion.[16] As Great Wall Construction points out, the Missouri courts have not been called upon to give a great amount of guidance as to the standard for such discretion. However, the Missouri Court of Appeals upheld a trial court's refusal to

---

[15] Mo. Rev. Stat. § 431.180.

[16] *See Vance Bros., Inc. v. Obermiller Constr. Servs., Inc.*, 181 S.W.3d 562, 564 (Mo. 2006).

grant the 18% interest and attorney's fees under § 431.180 because the contractor's refusal to pay the plaintiff was "not unreasonable," in that a dispute as to the quality of the work had arisen.[17] In another case, the Missouri Court of Appeals characterized the 18% interest conferred under the statute as "penalty interest."[18] On the other hand, the Missouri Supreme Court has held that § 431.180 contains no good faith element,[19] suggesting that a court is not required to find that the withholding of payment was not in good faith before interest and fees can be awarded.[20]

Here, rather than paying Great Wall Construction as the general contractor, who would then pay the subcontractors, the Bank was making payments to the subcontractors directly, through its disbursing agent, Hogan Land Title. Indeed, Allied received its first payment via Hogan Land Title. Thus, although Great Wall was contractually responsible for paying Allied pursuant to the contract between those two parties, the reason Allied was not paid the remainder if its claim was because the loan had already been fully disbursed before everyone was paid, and not because Great Wall had received the funds intended for Allied, and then failed to pay such

---

[17] *Walton Constr. Co. v. MGM Masonry, Inc.* 199 S.W.3d 799, 807 (Mo. Ct. App. 2006).

[18] *Fru-Con/Fluor Daniel Joint Venture v. Corrigan Bros., Inc.* 154 S.W.3d 330, 338 (Mo. Ct. App. 2004).

[19] *Vance Bros. v. Obermiller Constr.*, 181 S.W.3d at 564 n. 5.

[20] *See also Environmental Energy Partners, Inc. v. Siemens Bldg. Technologies, Inc.*, 178 S.W.3d 691, 712 (Mo. Ct. App. S.D. 2005).

funds over to Allied. In other words, Great Wall was unable to pay Allied because Great Wall had not received the money to do so.

As a result, while the Missouri Supreme Court does not require that the withholding of payment to the subcontractor be in bad faith, I find that the circumstances do not warrant an award of interest or attorneys' fees under § 431.180.[21] Nevertheless, Allied is entitled to interest on its judgment, at the applicable judgment rate.

ACCORDINGLY, the Clerk of the Court is DIRECTED to enter Judgment against GT Casey, Inc. GT Casey, Inc.'s asserted mechanic's lien is voided. The Clerk of the Court is further DIRECTED to enter Judgment in favor of Allied Roofing Systems, Inc., and against Debtor Town Center Plaza, L.L.C., and Great Wall Construction, Inc., jointly and severally, in the amount of $46,629.75. Allied's judgment against the Debtor is not entitled to interest; its judgment against Great Wall Construction is entitled to interest at the judgment rate. Allied's request for interest and attorneys' fees pursuant to § 431.180 of the Missouri Statutes is DENIED. The Clerk of the Court is further DIRECTED to enter Judgment in favor of Arvest Bank

---

[21] Allied asserts in its Suggestions in Support of its claim under § 431.180 that it initially asserted its request for interest and attorney fees in its counterclaim and cross-claim filed in the state court mechanic's lien action on May 29, 2009, and that none of the defendants filed a response to that request until February 18, 2010, and without leave of this Court. Even assuming that that is correct, I am not required to use my discretion to award fees and interest as a result.

as successor to Solutions Bank, and against Allied Roofing Systems, Inc., on Allied's claim for unjust enrichment.  All other requests for relief are DENIED.

IT IS SO ORDERED.

/s/ Arthur B. Federman<br>Bankruptcy Judge

Date: 5/21/2010

Court to serve parties not receiving electronic notice